IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOSHUA BLAND,                         *

    Plaintiff,                   *

vs.                                   *
                                   CASE NO. 4:17-CV-190 (CDL)

SAM'S EAST, INC., WAL-MART          *
ASSOCIATES, INC., and WAL-MART
STORES, INC.,                         *

    Defendants.                  *

O R D E R

Joshua Bland previously worked for Sam's East, Inc. ("Sam's").[1] Sam's claims it terminated Bland for disrespectful conduct toward his manager. Bland alleges that he was terminated after he complained of a race-based double standard. He brings this action pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981. Sam's moved for summary judgment (ECF No. 20). For the following reasons, Sam's motion is granted as to Bland's discriminatory termination claim but denied as to Bland's retaliatory termination claim.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] The parties use "Sam's" to reference all three defendants in this case. Therefore, the Court does the same in this Order.

1

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Bland, the parties' citations to the record reveal the following facts:

**I. Bland's Tenure at Sam's**

Bland is a white male. He started working at Sam's as a tire technician in January 2017. He reported to team leader Rebecca McCoy, who reported to assistant manager Walter Capozucca. Edgar Cornell Robinson, a black male, also worked as a Sam's tire technician. On April 24, 2017, Bland and Robinson argued and cussed at one another. During the argument, Robinson said he would "beat [Bland's] ass." Bland Dep. 86:14-15, ECF No. 22. In response, Bland suggested they "go outside or do it right here." *Id*. at 86:15-17. Robinson said he did not want to lose his job, so both Bland and Robinson walked away. *Id*. at 86:17-21. Robinson

2

also called Bland a "dumbass, hillbilly, redneck, white boy" and threatened to damage his new rims. *Id*. at 87:11-20.

After the argument, Robinson complained to management that the other technicians were arguing and not helping him enough. McCoy then requested statements regarding the incident from the tire technicians and told them Capozucca was on his way to talk to them. *Id*. at 89:14-18. All the technicians, including Bland, provided statements and handed them to Capozucca when he arrived. *Id*. at 89:17-19. Bland's statement included his complaint that Robinson had called him a "dumb redneck/hillbilly." *Id*. at 97:4-11. Capozucca then gave the technicians a twenty-five second "pep talk" and encouraged them to work together. *Id*. at 86:23-25; 94:20-95:3. Capozucca did not specifically address the incident between Bland and Robinson or say anything about racial name-calling. Darden Dep. 20:4-13, ECF No. 27. Capozucca took no other action regarding Bland's complaint about Robinson's conduct.

## II. Bland's Termination

The next day, Bland texted McCoy regarding his work schedule for the following day, April 26. *See generally* McCoy Dep. Ex. 46, Text Messages from J. Bland to R. McCoy (Apr. 25, 2017), ECF No. 26-1. McCoy told him he was scheduled to work with Robinson that day and encouraged him to behave himself and stay out of trouble. *Id*. When Bland reported to work the next day, he approached Capozucca and said, "[h]ey, just so you know, I'm opening with

3

[Robinson]." Bland Dep. 102:8-9. Capozucca then pulled both Bland's and Robinson's statements from his pocket and told Bland that he and Robinson were "embarrassing" and should both be fired. *Id*. at 102:13-18. Bland replied that he was one of the best employees in the shop. He also told Capozucca that if Bland had used the "N word" during his argument with Robinson, he would have been fired immediately. *Id*. at 102:23-25. Bland complained that Capozucca had taken no action against Robinson for being racist toward him. *Id*. at 113:3-12; *see also* Bland Aff. ¶ 4, ECF No. 35-42. Capozucca then grew angry and directed Bland to clock out and go home. Bland Dep. 103:2-5.

Bland called the store later that day and learned he had been terminated for being rude, disrespectful, and aggressive toward Capozucca. *See id*. at 120:11-25 (describing exit interview document which stated that Bland was "very aggressive" with Capozucca and "didn't know what might happen" between him and Robinson). Bland, however, felt he was not rude to Capozucca in any way. *Id*. at 114:2-10. He testified that he did not raise his voice, step forward or lunge toward him, or stand over him in a hostile way. *Id*. at 105:18-106:1. He also testified that he "particularly" was not trying to intimidate Capozucca and did not walk near him for that reason. *Id*. at 106:15-19.

Other employees remembered the encounter differently. Bland's exit interview information states that when he arrived at

4

work on April 26, he "was very aggressive and negative with [Capozucca] about another associate." Exit Interview 1, ECF No. 22-4. It also stated that Bland "had very aggressive body language." *Id*. After his termination, Bland also made a complaint to Sam's Ethics Hotline about his termination and the lack of discipline for Robinson. *See* Case Details Mem. 1-2 (May 2, 2017), ECF No. 35-16. Sam's opened an investigation and took another statement from Capozucca. Capozucca Dep. 60:13-16, ECF No. 28. In that statement, Capozucca noted that Bland came by "with a mean attitude" and complained about having to work with Robinson that morning. Capozucca Statement (May 16, 2017), ECF No. 35-21 at 3. Capozucca stated that Bland "looked like he wanted to fight [him] and [Robinson]." *Id*. Capozucca also claimed Bland had "his arms and hands like he was going to start with me. He disrespected me because I never talked to him in a bad tone or bad attitude towards him." *Id*. Capozucca likewise testified that Bland "got really close" to him, causing him to step back because he "didn't know what was going to happen." Capozucca Dep. 46:15-18. He thought it was possible that Bland would take a swing at him. *Id*. at 91:7-15. But Capozucca also testified that at the time of the interaction he "[c]ould have been" afraid that Bland would physically harm him, but that he did not know. *Id*. at 80:14-17.

Another Sam's employee, Latasha Wims, was present at the time of the encounter. She likewise testified that Bland spoke to

5

Capozucca about scheduling and "[t]hen from there he just, like exploded." Wims Dep. 14:5-10, ECF No. 24. She stated that Bland was "saying bad things" to Capozucca, getting "aggressive," had "a bad attitude and filthy mouth," and "use[d] foul language." *Id*. at 14:10-18.

### III. Video Footage of the Termination

Cameras recorded video, but not audio, of the interaction between Bland and Capozucca. After he was terminated, Bland returned to the store several days later to try to speak with the store manager, Madeline Torres. When she refused to speak with him, Bland told her she would hear from his lawyer. Hayes Dep. 12:3-6, ECF No. 38 (describing conversation between Bland and Torres); *see also* Torres Dep. 39:12-40:6, ECF No. 31 (recalling the conversation). Bland also applied to the Georgia Department of Labor for unemployment benefits and explained to the state examiner that he was suing Sam's in federal court over his termination. *See* Email from J. Bland to V. Wilberd (June 2, 2017), ECF No. 35-26. The Department of Labor approved Bland's request for benefits, and Torres decided to appeal that decision, presumably having read Bland's rebuttal to the state examiner describing his prospective federal lawsuit. *See* Cooper Dep. 20:5-12, ECF No. 34 (explaining that Torres made the decision to appeal); Letter from T. Freeman to Ga. Dep't of Labor (June 21, 2017), ECF No. 34-6. Sam's destroyed the video footage pursuant

to its record retention policy 60 days after the incident, despite having some notice of Bland's intent to sue based on his statement to Torres and his unemployment claim.

Before the video's destruction, a Sam's employee named Mary Elizabeth Gill viewed the footage. She testified that she would not have fired Bland based on what she saw on the video, but that she could not say how Capozucca felt. Gill Dep. 128:20-22, ECF No. 25. She further stated that if Capozucca felt intimidated, "then he had every right to do what he did." *Id*. at 128:24-25. Gill is "not a small person" and "would not have felt threatened," but stated that Capozucca "very well might have." *Id*. at 69:20-23.[2]

**IV. Sam's Workplace Policies**

Sam's uses a progressive discipline policy for its associates known as "Coaching for Improvement." *See* Coaching for Improvement (Mar. 1, 2016), ECF No. 32-2. The policy provides the following steps of progressive discipline: first written coaching, second

---

[2] Bland moved for sanctions prohibiting Sam's from proffering his behavior toward Capozucca as a reason for his termination based on the destruction of the videotape (ECF No. 36). As explained below, the Court must accept Bland's version of the encounter at this stage; and therefore, he does not need the Court to strike Sam's defense or an adverse inference arising from the spoliation to survive summary judgment on his retaliation claim. Furthermore, even if Sam's suffered an adverse inference due to the destruction of the video, Bland would still not be able to avoid summary judgment on his race-based termination claim. Consequently, Bland's motion for sanctions regarding the destruction of the video is irrelevant to the determination of the pending summary judgment motion. The Court therefore reserves ruling on Bland's motion for sanctions until trial.

written coaching, third written coaching, active coaching period, investigations and appropriate action, and termination. *Id*. at 1. Bland had received two written coachings for working through his lunch period, but had received no other discipline under the policy. The policy also provides that an associate may be immediately terminated and will not be eligible for rehire for "[v]iolence or a safety violation, that creates a high risk of injury to people or damage to property." *Id*. at 3. Torres testified, however, that Bland was not terminated for such a violation and is eligible for rehire. *See* Torres Dep. 43:22-44:9.

Additionally, Sam's "Violence-Free Workplace Policy" prohibits "any form of violence or threat of violence in or affecting the workplace, other associates or our customers/members. This includes, but is not limited to, any conduct or communication . . . which: 1) harms, damages, injures harasses, intimidates, bullies, threatens, stalks, taunts, forces, coerces, restrains or confines another person; [or] 2) reasonably causes another person to fear for his/her health or safety." Violence-Free Workplace Policy 1 (Mar. 21, 2017), ECF No. 22-1. The policy also provides that violations could subject an associate "to disciplinary action up to and including termination." *Id*. at 2. Torres testified that Bland was terminated for his disrespectful approach to Capozucca and "violence in the workplace." Torres Dep. 45:7-9.

DISCUSSION

Bland brings race discrimination and retaliation claims pursuant to Title VII and § 1981. Title VII and § 1981 claims "have the same requirements of proof and use the same analytical framework." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256-57 (11th Cir. 2012) (quoting *Standard v. ABEL Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Therefore, the following analysis applies to both sets of claims.

Bland pointed to no direct evidence of discrimination or retaliation. Therefore, both his claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, Bland must first "create an inference" of discrimination or retaliation by establishing his prima facie case. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). "Once the plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally." *Id.* (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)). "The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action." *Id.* (quoting *Alvarez*, 610 F.3d at 1264). "If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext" for

9

discrimination or retaliation. *Id*. (quoting *Alvarez*, 610 F.3d at 1264). As explained below, the Court concludes Bland waived his discriminatory termination claim, but that his retaliation claim survives summary judgment.

**I. Discriminatory Termination**

Bland alleges that Sam's discriminated against him by terminating him not only because of his complaint to Capozucca, but also because of his race. Sam's argues that Bland waived this claim. A plaintiff may only waive a discrimination claim through an "unequivocal concession." *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1289 (11th Cir. 2018) (quoting *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 661 (11th Cir. 2012) (per curiam)). Bland testified as follows:

> Q: Do you believe that you were terminated because of your race?
>
> A: No. I think I was terminated more along the lines of [Capozucca] didn't want to deal with it. He didn't want to hear about it, like, along those lines. I don't think it was, like, a white thing, though, you know.

Bland Dep. 136:21-137:2. Bland pointed to no testimony where he expressed his belief that he was terminated because of his race. Instead, as Bland's testimony makes clear, he believes he was terminated because of his complaint about Robinson's name-calling, his complaint to Capozucca about Capozucca's refusal to act, and his belief (as he expressed it to Capozucca) that if he had used the "N word" to Robinson, Capozucca would have treated the

10

situation differently.  Therefore, Bland unequivocally conceded his discriminatory termination claim.  *Compare Ross*, 701 F.3d at 661 (finding waiver when plaintiff was asked during her deposition whether she "[felt] like [her] termination had anything to do [with] . . . [her] race" and responded, "no"), *with Smelter*, 904 F.3d at 1289-90 (concluding that plaintiff did not waive claim when answering question about whether she believed non-decisionmaker was "being racial" when informing plaintiff of termination).  Therefore, Sam's motion for summary judgment on this ground is granted.[3]

## II. Retaliation

Sam's next contends Bland cannot establish a prima facie case of retaliation.  Title VII prohibits an employer from retaliating against an employee for opposing racial discrimination.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, Bland must show: (1) he engaged in an activity protected under Title VII, (2) he suffered an adverse employment action, and (3) his protected activity "was a but-for cause of the alleged adverse action by the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*,

---

[3] Likewise, summary judgment is proper on Bland's discriminatory termination claim because he failed to point to a valid comparator to establish his prima facie case.  Further, Bland failed to point to a convincing mosaic of circumstantial evidence to create a triable issue concerning Sam's discriminatory intent regarding his termination. *See, e.g.*, *Smith v. Lockheed-Martin, Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (noting that failure to point to a comparator "does not necessarily doom the plaintiff's case").  Accordingly, summary judgment is also proper on Bland's discriminatory termination claim for these reasons.

11

570 U.S. 338, 362 (2013); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (setting forth prima facie case elements). The statute's protections, however, "only reach individuals who 'explicitly or implicitly communicate[] a belief that the practice constitutes unlawful employment discrimination.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (alteration in original) (quoting Equal Emp't Opportunity Comm'n Compliance Manual § 8-11-B(2) (2006)).

A. <u>Protected Activity</u>

Sam's contends Bland cannot establish the protected activity prong of his prima facie case. To establish this prong, "a plaintiff is required to show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Id.* (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). "This burden includes both a subjective and an objective component." *Id.* Therefore, Bland must show both that he "subjectively (i.e., in good faith)" believed he was opposing unlawful discrimination and that his belief "was *objectively* reasonable in light of the facts and record present." *Id.* (quoting *Little*, 103 F.3d at 960). Bland need not prove, however, "that the discriminatory conduct complained of was actually unlawful." *Id.*

12

Bland points to his verbal complaint to Capozucca about Capozucca's deficient treatment of his written complaint of Robinson's racial harassment as statutorily protected activity.[4] In that statement, Bland complained to Capozucca that he would have been immediately fired if he had used the "N word" to Robinson, but that Robinson was not disciplined for calling him a "dumb redneck/hillbilly." Therefore, to survive summary judgment, Bland must demonstrate that he subjectively believed Sam's failure to address the allegations in his written statement constituted an unlawful employment practice and that this belief was objectively reasonable.

### 1. *Subjective Component*

Sam's first argues that Bland did not subjectively believe that his "N word" comment opposed an unlawful employment practice. Sam's points to Bland's deposition testimony stating that he "wasn't trying to make [his conversation with Capozucca] a race thing at all." Bland Dep. 110:16-17. Bland elaborated on this testimony in an affidavit in response to summary judgment. In that affidavit, Bland explained that his initial purpose for

---

[4] Bland appears to rely only on this statement, not his April 24 written complaint, for this requirement. Pl.'s Mem. of Law in Supp. of Pl.'s Opp. to Defs.' Mot. for Summ. J. 5, ECF No. 35; *see also id.* at 8 ("Plaintiff's complaint that Defendant did not give sufficient attention to his earlier statement that he was being racially harassed by a co-worker was a statutorily protected statement so as to support his claim for retaliation."). Therefore, the Court does not consider whether Bland's April 24 written statement constitutes protected activity.

speaking to Capozucca was to tell him that he and Robinson had argued two days earlier and were scheduled to open the shop together and was unrelated to race. Bland Aff. ¶ 7. Bland stated that the conversation "became a 'race thing' when [he] complained about [Capozucca] not properly addressing [his] complaint about [Robinson's] racist behavior." *Id*.

Sam's urges the Court to strike this portion of Bland's affidavit as a sham. A court may only "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts [a plaintiff's] prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron*, 843 F.3d at 1306; *see also id*. at 1306-07 (explaining that "sham affidavit" rule should be applied "sparingly" (quoting *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007))). Bland's deposition testimony that he was not "trying" to make his conversation with Capozucca a "race thing" is not inconsistent with his affidavit that the conversation became a "race thing" when Bland brought up his earlier complaint about Robinson. Therefore, the Court considers Bland's affidavit in this Order.[5] Consequently, Bland pointed to sufficient evidence that he subjectively believed he was making a race-based complaint of an unlawful employment practice to

---

[5] Sam's also objected to ¶ 4 of Bland's affidavit for the same reasons. The Court likewise considers ¶ 4.

14

Capozucca before his termination, and Sam's motion for summary judgment on this ground is denied.

*2. Objective Component*

Sam's next argues that Bland's belief was not objectively reasonable. First, Sam's contends that Bland's complaint related only to a hypothetical Title VII violation about what would happen to him if he used a racial slur. But Bland's complaint was not about hypothetical discipline for him, but rather about Capozucca's actual failure to discipline or investigate Robinson. Bland simply analogized the actual situation to a different one to make his point about what he perceived to be Capozucca's deficient treatment of the matter. This statement also clearly communicated Bland's belief that Capozucca's treatment of his written complaint was unfair and perhaps unlawful, thus bringing Bland within the protection of Title VII's anti-retaliation provisions.

Further, Bland could reasonably believe that Sam's failure to investigate his complaint of racial harassment by Robinson was unlawful. Title VII broadly prohibits an employer from discriminating against any employee with respect to the "terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Bland complained to Capozucca that Sam's failed to investigate his complaint of racial harassment in the workplace because he was white, not black. Bland "need not be correct in [his] beliefs or consult a lawyer

15

for expert analysis of [his] complaint" to form a good faith belief that this constituted unlawful discrimination. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018). Accordingly, Bland pointed to sufficient evidence to create a genuine dispute as to whether his belief was objectively reasonable, and Sam's motion for summary judgment on this ground is also denied.

B. <u>Pretext</u>

Additionally, Sam's contends that Bland cannot demonstrate that its proffered non-retaliatory reason for his termination, his behavior toward Capozucca, is pretextual. Bland must meet this proffered reason "head on and rebut it," and he cannot survive summary judgment "by simply quarreling with the wisdom" of this reason. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). "The inquiry at this stage asks whether the plaintiff has produced 'reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct.'" *Crockett v. GEO Grp., Inc.*, 582 F. App'x 793, 797 (11th Cir. 2014) (per curiam) (quoting *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001)); *see also id*. (applying the burden-shifting framework to Title VII retaliation claim).

Here, Bland clearly testified that he did not act aggressively toward Capozucca in any way. He instead testified that he "particularly" sought to avoid antagonizing Capozucca during the

interaction. Though the weight of the evidence may not support Bland's version of events, the Court must accept it at this stage. And when viewing the facts in this light, Bland clearly pointed to evidence sufficient for a jury to disbelieve Sam's proffered reason for his termination. Additionally, Capozucca's ambiguous testimony about his fear during the interaction, Gill's testimony that the conduct she viewed on the destroyed tape was neither intimidating nor fire-able, and Torres's willingness to rehire Bland notwithstanding his behavior could also support Bland's version of events. Based on this evidence, a jury could find that Sam's proffered reason for Bland's termination was pretextual and that Sam's was instead motivated by unlawful retaliation. Accordingly, Sam's motion for summary judgment on this ground is denied.[6]

CONCLUSION

As explained above, the Court grants in part and denies in part Sam's motion for summary judgment (ECF No. 20); Bland's retaliation claims under Title VII and § 1981 shall proceed to trial. The Court reserves ruling on Bland's motion for sanctions

---

[6] Sam's likewise argues that Bland's misconduct severs the chain of causation necessary for his prima facie case of retaliation. But because Bland pointed to evidence disputing whether he even engaged in misconduct, that misconduct cannot sever the causal connection as a matter of law at this stage. Additionally, because of the close temporal proximity between Bland's verbal complaint and his termination, a jury could find a causal connection between his protected activity and termination.

17

(ECF No. 36) and will hear oral argument from the parties on this motion at the final pretrial conference.

The Court denies Sam's motion for a continuance of the pretrial conference deadlines (ECF No. 48). The Court will accommodate defense counsels' conflict during the first week of the trial term, but intends to try this case during the upcoming March term of court.

IT IS SO ORDERED, this 9th day of January, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
