IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOSHUA BLAND,                  *

    Plaintiff,             *

vs.                            *     CASE NO. 4:17-CV-190 (CDL)

SAM'S EAST, INC., *et al.*,    *

    Defendant.             *

## O R D E R

This Order addresses Plaintiff Joshua Bland's motion regarding Defendants' alleged spoliation of evidence and various motions in limine that the Court ruled upon at the pretrial conference.

This is a retaliation case. Bland is a white male who was formerly employed as a tire technician at Sam's Club. Before his termination, Bland argued with coworker Edgar Cornell Robinson, a black male. Bland claims Robinson called him a "dumb, redneck, hillbilly, white boy." Management heard about the argument and asked all the tire technicians to provide written statements about the incident. Bland reported Robinson's comment in his statement and complained that it was racially discriminatory. Bland's supervisor, Walter Capozucca, addressed all the tire technicians and told them to work together. Capozucca took no action against Robinson for his comment to Bland.

1

Several days later, Bland reported to work and told Capozucca that he was scheduled to open the shop with Robinson. Bland complained to Capozucca that he had taken no action against Robinson. Bland commented that if he had used the "N word" toward Robinson, Capozucca would have fired him immediately. Bland therefore complained about what he believed to be a disciplinary double standard based on race. Capozucca then told Bland to clock out and go home. Bland later learned that Capozucca had terminated him. Bland returned to the store to try to speak to the store manager, but she refused to see him. Bland then called the Sam's ethics hotline and reported that although he had complained about Robinson's conduct, nothing had been done and he had been terminated.

Sam's claims it terminated Bland's employment in part because of conduct he displayed in front of Capozucca. Cameras recorded video, but not audio, of Bland's dispute with Robinson and of the interaction between Bland and Capozucca. Sam's destroyed the video footage pursuant to its record retention policy 60 days after the incidents. Bland sued Sam's for discriminatory termination and retaliation. The Court granted summary judgment on Bland's discriminatory termination claim but denied summary judgment on his retaliation claim.

Bland moved for sanctions (ECF No. 36) based on Sam's destruction and failure to preserve the video footage and Sam's

2

failure to produce the written statement of Bland's coworker and fellow tire technician Ricky Darden.[1] Bland seeks a jury instruction authorizing the jury to draw an adverse inference due to the spoliation of the evidence. The Court granted Bland's motion at the pretrial conference as more fully explained in the remainder of this Order. The Court also made oral rulings on the parties' various motions in limine which are documented in this Order.

DISCUSSION

**I. Bland's Motion for Sanctions**

A. Legal Standard

The Court considers the following factors in determining whether to issue sanctions for spoliation of evidence: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed." *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018). For the third factor, Bland need not show malice to establish Sam's bad faith. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946

---

[1] Bland also moved for sanctions based on Sam's failure to produce the written statement of coworker Marcel Piett. Bland did not mention Piett's statement until his reply brief, so that argument is not properly before the Court. *See Najjar v. Ashcroft*, 257 F.3d 1262, 1283 n.12 (11th Cir. 2001).

3

(11th Cir. 2005). Instead, to determine whether a spoliating party acted in bad faith, the Court weighs "the degree of the spoliator's culpability against the prejudice to the opposing party." *Id*.[2]

B. <u>Discussion</u>

Sam's sets forth the following arguments opposing sanctions: (1) the Darden statement does not exist; (2) Sam's was under no duty to preserve until July 7, 2017, when Bland filed his EEOC charge; (3) even if Sam's had a duty to preserve, it did not extend to the video footage because the footage had no audio; (4) Bland is not prejudiced by the destruction of the evidence; and (5) Sam's did not act in bad faith. The Court addresses these arguments in turn.

*1. Ricky Darden's Statement*

First, Sam's contends Bland failed to carry his burden to show that the Darden statement actually existed. Darden clearly testified that he provided a written statement to Mary Gill, a Sam's employee. Darden Dep 18:12-17, ECF No. 27. Rebecca McCoy, the tire technician team leader, clearly testified that Capozucca told her to collect statements, that she collected a statement

---

[2] Federal Rule of Civil Procedure 37(e) governs a party's failure to preserve electronically stored information and arguably applies in this circumstance. The Eleventh Circuit has not decided whether Rule 37(e) displaces the traditional sanctions analysis. *See ML Healthcare Servs.*, 881 F.3d at 1308 (concluding that district court did not abuse its discretion by denying plaintiff's motion for sanctions under either analysis). The Court concludes for the same reasons as explained below that an adverse inference is likewise appropriate under Rule 37(e).

4

from Darden, and that she left Darden's statement (along with several others) in Capozucca's office. McCoy Dep. 77:7-21, ECF No. 26. The Court finds that Bland has carried his burden to show that Darden's statement existed at the relevant time.

### 2. *Sam's Notice of Litigation*

Sam's next argues that it had no notice of any pending litigation regarding Bland's termination until July 7, 2017, when Bland filed his EEOC charge. Because July 7 is more than 60 days after April 24 (date of the Bland-Robinson altercation) and April 26 (date of Bland's termination), Sam's contends it had no notice or duty to preserve the video footage and properly disposed of it pursuant to their policy.

After Sam's terminated Bland, Bland returned to the store several days later to try to speak with the store manager, Madeline Torres. When she refused to speak with him, Bland told her she would hear from his lawyer. Hayes Dep. 12:3-6, ECF No. 38 (describing conversation between Bland and Torres); *see also* Torres Dep. 40:3, ECF No. 31 (recalling that Bland declined her request to reschedule the meeting and told her: "[Y]ou'll hear from my lawyer."). Bland also applied to the Georgia Department of Labor for unemployment benefits and explained to the state examiner that he was suing Sam's in federal court over his termination. *See* Email from J. Bland to V. Wilberd (June 2, 2017), ECF No. 35-26. The Department of Labor approved Bland's request

5

for benefits, and Torres decided to appeal that decision, presumably having read Bland's rebuttal to the state examiner describing his prospective federal lawsuit. *See* Cooper Dep. 20:5-12, ECF No. 34 (explaining that Torres made the decision to appeal); Letter from T. Freeman to Ga. Dep't of Labor (June 21, 2017), ECF No. 34-6 (appealing the decision two weeks before Bland filed his EEOC charge and within 60 days of the April 24 and 26 incidents). It is also undisputed that Sam's investigated Bland's claim of discriminatory termination prior to its destruction of the video footage. That investigation included a review of the video footage, which Sam's claims corroborated its position and contradicted Bland's version of the events.

Under these circumstances, Sam's should have been alerted to the prospect of litigation involving Bland's termination well within the 60-day period, and it should have understood that the video footage contained relevant evidence. Therefore, Sam's had a duty to preserve relevant evidence. Sam's even recognized this duty in response to Bland's hotline complaint when it instructed Marshall Bacote, a Sam's employee tasked with investigating the complaint, to "obtain witnessing manager notes and statements, and review documents/video" and to "[k]eep these documents in a secure location, like a locked filing cabinet in the managers' office." Email from F. Cizerle to M. Bacote (May 4, 2017), ECF No. 32-4.

Accordingly, the Court rejects Sam's argument resisting sanctions on this ground.

### 3. Scope of Sam's Duty to Preserve

Sam's further argues that even if it had a duty to preserve, that duty did not extend to the video footage because it lacked audio and was therefore irrelevant to Bland's complaints. The Court finds this argument unpersuasive. While the absence of audio may have made the video footage irrelevant as to what was said, it still could have been relevant as to how the parties physically interacted. Accordingly, video footage of these two events is plainly relevant to his claims, even if it lacked audio, particularly since Sam's has attempted to justify Bland's termination based on his behavior toward Capozucca. Sam's had a duty to preserve it.

### 4. Prejudice to Bland

Sam's next contends Bland is not prejudiced by destruction of the evidence. Bland's side of the story is that Robinson was the aggressor in their dispute, that Robinson used "redneck" in a racially derogatory way, that Bland complained about it, that Capozucca did nothing about it, that Bland calmly pointed out the alleged disciplinary double standard employed by Capozucca, and that Capozucca immediately terminated him. If Darden's statement and video footage were available, Bland could point to it at trial to support his side of the story. But because it is not, Bland

must simply hope the jury takes his word for it. Further, Sam's asserts that it terminated Bland based on what he said during his interaction with Capozucca. But Bland's testimony is that he did not curse or raise his voice in any way when speaking to Capozucca. If the video were to corroborate his version of events regarding physical behavior, it would likewise cast doubt on Capozucca's testimony about what was said during the conversation. And Bland's opportunity to depose self-interested Sam's employees about the incident does not cure the prejudice. The Court therefore concludes that because Bland is unable to use the missing evidence to bolster his testimony or undermine Capozucca's testimony, he has demonstrated sufficient prejudice to merit an adverse inference instruction.

### 5. *Sam's Bad Faith*

Finally, Sam's argues Bland failed to point to evidence of bad faith. As explained above, to determine whether a spoliating party acted in bad faith, the Court weighs "the degree of the spoliator's culpability against the prejudice to the opposing party." *Flury*, 427 F.3d at 946. Here, the Court concludes Sam's culpability weighs in favor of imposing sanctions. Sam's could have easily saved the Darden statement and video footage. One of Sam's employees actually watched the video footage after Bland's

termination.[3] And Bland is prejudiced by being unable to point to what he alleges is corroborating evidence of his testimony. Accordingly, the Court concludes that this factor is satisfied.

### C. Balance of Factors

Balancing the factors listed above, the Court concludes that Bland has carried his burden to show that an adverse inference instruction regarding the Darden statement, the April 24 video footage of the Robinson dispute, and the April 26 video footage of the Capozucca termination is appropriate. Accordingly, Bland's motion for sanctions (ECF No. 36) is granted. The adverse inference instruction shall state as follows:

> You have heard evidence that cameras captured video, but not audio, of Bland's April 24 interaction with Robinson and his April 26 interaction with Capozucca. You have also heard evidence that Bland's coworker, Ricky Darden, submitted a written statement about Bland's April 24 incident with Robinson. The Court previously concluded Sam's had a duty to preserve this evidence, but that the evidence has been destroyed. In considering this evidence, you may conclude that the evidence would have been unfavorable to Sam's, but you are not required to do so.

---

[3] The Sam's employee who viewed the video, asset protection manager Mary Gill, testified that she would not have fired Bland based on what she saw on the video, but that she could not say how Capozucca felt. Gill Dep. 128:20-22, ECF No. 25. She also testified, however, that if Capozucca felt intimidated, "then he had every right to do what he did." *Id*. at 128:24-25.

**II. Motions in Limine**

Both parties filed motions in limine, and the Court ruled on the motions at the pretrial conference. Those rulings are summarized below:

- Bland's Motion in Limine (ECF No. 54) – Granted except to the extent the date Bland filed his EEOC charge is relevant to the jury's consideration of Defendants' duty to preserve evidence.

- Sam's Motion in Limine Regarding Financial Resources (ECF No. 55) – Granted.

- Sam's Motion in Limine Regarding Claims by Other Employees (ECF No. 56) – Granted.

- Sam's Motion in Limine Regarding Evidence of Spoliation (ECF No. 57) – Denied.

- Sam's Motion in Limine Regarding Discriminatory Termination Evidence (ECF No. 58) – Deferred to trial.

- Sam's Motion in Limine Regarding Emotional Distress Damages (ECF No. 59) – Deferred to trial.

IT IS SO ORDERED, this 31st day of January, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA